**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ZOHAIB ZIA, | No. 21-1325 |
| *Petitioner*, | Agency No. A063-608-680 |
| v. | OPINION |
| MERRICK B. GARLAND, Attorney General, | |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 20, 2023
Submission Vacated July 21, 2023
Resubmitted August 26, 2024
San Francisco, California

Filed August 26, 2024

Before: Mary M. Schroeder, Consuelo M. Callahan, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Callahan

# SUMMARY[*]

## Immigration

Dismissing in part and denying in part Zohaib Zia's petition for review of a decision of the Board of Immigration Appeals, the panel held that: (1) the court lacked jurisdiction to review the adverse credibility finding underlying the denial of Zia's good faith marriage waiver; and (2) the court had limited jurisdiction to review the good faith marriage finding as a mixed question of fact and law, but there was no error here.

Zia was a conditional permanent resident based on marriage. Due to divorce, he was unable to file a joint petition with his spouse to remove the conditions on his status. He sought a waiver of that requirement under 8 U.S.C. § 1186a(c)(4)(B), which requires a showing that the marriage was entered into in good faith.

The panel explained that 8 U.S.C. § 1252(a)(2)(B)(i) bars judicial review of any "judgment regarding the granting of relief" under certain enumerated sections, while § 1252(a)(2)(B)(ii) bars review of "any other decision or action . . . specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security." The good faith marriage waiver at § 1186a(c)(4)(B) is contained in that "subchapter," and is left to the discretion of the Secretary of Homeland Security.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the good faith marriage waiver and any underlying eligibility determinations fall within the scope of the jurisdiction-stripping provision in § 1252(a)(2)(B)(ii). Considering *Patel v. Garland*, 596 U.S. 328 (2022), which held that § 1252(a)(2)(B)(i) bars review of "any judgment regarding" the granting of relief under the enumerated provisions, the panel held that *Patel*'s interpretation equally applies to subsection (ii).

Relying on *Wilkinson v. Garland*, 601 U.S. 209 (2024), which held that the application of the statutory standard for hardship to established facts presents a mixed question that falls within the "Limited Review Provision" of 8 U.S.C. § 1252(a)(2)(D), the panel held that the good faith marriage finding similarly is a mixed question of fact and law this court can review under the Limited Review Provision.

However, under *Patel* and *Wilkinson*, the panel concluded that the court lacked jurisdiction to address Zia's factual challenge to the adverse credibility finding. Although the court could consider Zia's challenge to the finding that his marriage was not entered into in good faith, the panel found the credibility determination fatal to his claim. Reviewing this primarily factual mixed question under a deferential standard, the panel concluded that Zia's testimony was of little weight, and the remaining evidence did not compel reversal of the BIA's conclusion.

The panel also rejected, for lack of prejudice, Zia's argument that the agency violated his due process rights by failing to provide a complete hearing transcript.

**COUNSEL**

Nathaniel L. Nicoll (argued), San Francisco, California; Joseph J. Siguenza, Law Offices of Ashwani K. Bhakri, Burlingame, California; for Petitioner.

Jonathan A. Robbins (argued), Trial Attorney, Commercial Litigation Branch; Patricia Bruckner, Trial Attorney; W. Manning Evans, Senior Litigation Counsel; Office of Immigration Litigation; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

CALLAHAN, Circuit Judge:

Petitioner Zohaib Zia, a citizen of Pakistan, came to the United States as a conditional permanent resident based on his marriage to a U.S. citizen. *See* 8 U.S.C. § 1186a(a)(1), (d)(2). As the two-year end-date of Zia's conditional residency approached, Zia petitioned to remove the conditional basis of his resident status. *See id.* § 1186a(d)(2), (c)(1). Because his marriage ended in divorce, Zia was unable to file a joint petition with his spouse that is usually required. Instead, Zia petitioned for a hardship waiver to the joint filing requirement based on his marriage having been entered into in "good faith." *Id*. § 1186a(c)(4)(B). Zia's petition was denied first by U.S. Citizenship and Immigration Services and then by the Board of Immigration Appeals ("BIA"). He now asks this court to review the BIA's order.

This case requires us to first evaluate how recent direction from the Supreme Court in *Patel v. Garland*, 596 U.S. 328 (2022), and *Wilkinson v. Garland*, 601 U.S. 209 (2024), impacts the scope of our jurisdiction to review a good faith marriage determination by the BIA. After doing so, we hold that we lack the authority to entertain Zia's challenge to the adverse credibility finding and decline to overturn the BIA's decision as to the remaining arguments raised in his petition. We thus dismiss in part and deny in part Zia's petition for review.

## I.

Zia is a citizen and native of Pakistan. In 2012, while in Pakistan, Zia married a United States citizen, Anum Haq. Haq returned to the United States shortly after the wedding. In May 2014, Zia was granted a two-year conditional permanent resident status based on his marriage to Haq and moved to live with her in Chicago. *See* 8 U.S.C. § 1186a(a)(1), (d)(2). Their reunion was short-lived, however, as they separated a month later. Haq filed for divorce in July 2014.

In May 2016, Zia filed a petition under 8 U.S.C. § 1186a to remove the conditional basis of his permanent resident status. Under § 1186a, an alien who previously obtained conditional permanent resident status on account of his marriage to a U.S. citizen can petition for removal of the conditional basis by filing a joint petition with the U.S. citizen spouse. 8 U.S.C. § 1186a(c)(1). If a joint petition is no longer possible because the marriage has terminated, the alien can seek a "hardship waiver" of the joint filing requirement. *Id.* § 1186a(c)(4)(B). To qualify for such a waiver, the alien must show the marriage was entered into in "good faith." *Id.* Because he was unable to file a joint

petition, Zia sought a waiver, stating that his marriage was entered into in good faith even though it ended in divorce.

U.S. Citizenship and Immigration Services ("USCIS") found that Zia and Haq had not entered into their marriage in good faith, and thus he was not eligible for the waiver. USCIS subsequently terminated Zia's conditional permanent resident status.

In 2018, the Department of Homeland Security issued Zia a notice to appear, charging him as removable pursuant to 8 U.S.C. § 1227(a)(1)(D)(i) as an alien whose conditional lawful resident status under § 1186a had been terminated. As part of his removal proceeding, Zia renewed his petition to remove the conditions on his permanent resident status before an Immigration Judge ("IJ").

The IJ denied Zia's request, finding that Zia did not enter into his marriage with Haq in good faith. The IJ determined that Zia was not credible, and that Zia's testimony was "extremely vague regarding the circumstances surrounding his marriage." Finding the remaining evidence in the record insufficient to carry Zia's burden of showing that he entered into the marriage in good faith, the IJ denied his request.

Zia appealed to the BIA, first asserting a due process violation based on an inadequate hearing transcription with "indiscernible" notations (i.e., entries where the transcript had not captured what was said at the hearing). He argued the transcript was insufficient for him to review the IJ's findings and that he was prejudiced because there was not a complete record of his testimony in violation of 8 C.F.R. § 1240.9, which requires a verbatim record of the hearing. Zia also challenged the IJ's adverse credibility finding and denial of his petition for a good faith marriage waiver.

The BIA held that any errors in the transcript "d[id] not prevent meaningful review as later testimony often clarified earlier 'indiscernible' entries." The BIA also concluded Zia had not shown prejudice affecting his ability to appeal. The BIA then affirmed the IJ's adverse credibility determination, finding it was based on "specific, cogent reasons," and was not clearly erroneous. Finally, the BIA agreed with the IJ that the remaining documentary evidence provided by Zia was insufficient to show that he entered the marriage "with the intent to establish a life together" with Haq.

Zia timely petitioned for review, arguing the BIA erred on all counts.

## II.

In the immigration context, Congress has "sharply circumscribed" the scope of judicial review of certain BIA decisions. *Patel v. Garland*, 596 U.S. 328, 332 (2022). 8 U.S.C. § 1252 generally grants federal courts the power to review final orders of removal. However, in § 1252(a)(2)(B), passed as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") and titled "Denials of discretionary relief," Congress stripped courts of jurisdiction over two categories of removal orders. First, § 1252(a)(2)(B)(i) bars judicial review of any BIA "judgment regarding the granting of relief" under certain enumerated sections. Second, § 1252(a)(2)(B)(ii) prevents our review of "any other decision or action of the Attorney General or Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."

That was not the last word, however, as nine years after IIRIRA, Congress passed the REAL ID Act of 2005 enacting

§ 1252(a)(2)(D)—the    so-called    "Limited    Review
Provision." *See Guerro-Lasprilla v. Barr*, 589 U.S. 221, 225
(2020).  This section preserves the jurisdiction of federal
courts to review "constitutional claims or questions of law."
Questions of law include mixed questions of law and fact.
*Id.*

Section 1186a(c)(4) is contained in the "subchapter"
referenced in § 1252(a)(2)(B)(ii).  It states that the decision
to remove the conditional basis of a permanent resident
based on a good faith marriage waiver is a decision left to
"the Secretary [of Homeland Security]'s discretion."   8
U.S.C. § 1186a(c)(4).  Additionally, it provides that "[t]he
determination of what evidence is credible and the weight to
be given that evidence shall be within the sole discretion of
the Secretary." *Id.*

Under our precedent, good faith marriage waivers have
been subject to judicial review.  *See Oropeza-Wong v.
Gonzales*, 406 F.3d 1135, 1142 (9th Cir. 2005).   The
government contends that this precedent is clearly
irreconcilable with the Supreme Court's recent decisions in
*Patel v. Garland*, 596 U.S. 328 (2022) and *Wilkinson v.
Garland*, 601 U.S. 209 (2024), and argues we lack
jurisdiction to review Zia's petition.  Although a three-judge
panel is typically bound by prior circuit law, we may
"reexamine normally controlling circuit precedent in the
face of an intervening United States Supreme Court
decision." *Miller v. Gammie*, 335 F.3d 889, 892 (9th Cir.
2003) (en banc).  We do so here, and for the reasons
articulated below, we agree with the government.

## A.

We begin with the initial question of whether the BIA's
grant or denial of a good faith marriage waiver under

§ 1186a(c)(4)(B) fits within the jurisdiction-stripping provision of § 1252(a)(2)(B)(ii). We hold that it does.

In *Oropeza-Wong*, we considered this exact question but came to a contrary conclusion. We rejected an argument from the government that § 1252(a)(2)(B)(ii) stripped our jurisdiction, holding that good faith waiver determinations "are not purely discretionary and are therefore generally subject to review." *Oropeza-Wong*, 406 F.3d at 1142. We held that "[u]nless the disputed determination is purely discretionary—unless there are no questions of fact or law at issue—judicial review is not precluded." *Id.* We then held that the BIA had not erred in its adverse credibility determination, and that substantial evidence supported the BIA's finding that Oropeza-Wong had not entered into a good faith marriage. *Id.* at 1148.

This holding is "irreconcilable" with the Supreme Court's recent decision in *Patel*. There, the Court read § 1252(a)(2)(B)(i)'s bar on judicial review expansively to "prohibit[] review of *any* judgment *regarding* the granting of relief under [the enumerated provisions]." *Patel*, 596 U.S. at 338. (emphasis in original). The Court made clear that § 1252(a)(2)(B)(i) applies to *all* aspects of the BIA's decision regardless of whether the underlying determinations are characterized as discretionary or factual, rejecting the government's argument that "judgment" refers exclusively to "discretionary" decisions. *Id.* at 340–42. *Patel* specifically held that "[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under [the enumerated provisions] in § 1252(a)(2)(B)(i)." *Id.* at 347.

Although *Patel* addressed § 1252(a)(2)(B)(i), its reasoning applies to the neighboring subsection

§ 1252(a)(2)(B)(ii). The two subsections are similar, with the first discussing "any judgment" made by the agency under certain listed statutes and the second—a broader catchall provision—referencing "any other decision or action" left to the discretion of the agency. "The proximity of clauses (i) and (ii), and the words linking them—'any other decision'—suggests that Congress had in mind decisions of the same genre, *i.e.*, those made discretionary by legislation." *Kucana v. Holder*, 558 U.S. 233, 246–47 (2010) (reading the provisions harmoniously). We hold that *Patel*'s interpretation of "any judgment" in subsection (i) thus equally applies to "any other decision or action" in subsection (ii). *See Miller*, 335 F.3d at 900 (noting "the issues decided by the higher court need not be identical in order to be controlling"). We read "any other decision or action" expansively to cover all determinations made in support of a grant of discretionary relief under subsection (ii).

Section 1186a(c)(4) is such a grant of discretionary relief. The statutory language of § 1186a(c)(4) allows a good faith marriage waiver to be granted "in the Secretary's discretion" and leaves credibility determinations and weighing of the evidence to "the sole discretion of the Secretary." *Id.* Despite this clear statutory language, *Oropeza-Wong* held that good faith marriage waiver decisions "are not purely discretionary and are therefore generally subject to review." 406 F.3d at 1142. This statement cannot be reconciled with the reasoning in *Patel* rejecting a discretionary/non-discretionary distinction when determining whether a BIA decision or finding fits within the jurisdiction-stripping provision. *See Patel*, 596 U.S. at 341–42. *Patel* makes clear that any underlying eligibility determination made in support of the ultimate discretionary

decision is beyond judicial review—"[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings." *Id.* at 347. Our previous holding that a determination is "purely discretionary" and therefore within the jurisdiction-stripping provisions only when "there are no questions of fact or law at issue" is no longer good law. *Oropeza-Wong*, 406 F.3d at 1142. Similarly, our holding in *Oropeza-Wong* that the statute does not "strip courts of jurisdiction to review adverse credibility determinations in particular," *id.*, cannot be reconciled with *Patel*'s holding that the jurisdiction-stripping provision "plainly includes factual findings" such as credibility determinations, *Patel*, 596 U.S. at 339. We therefore now hold that the BIA's decision on a good faith marriage waiver and any underlying eligibility determinations fall within the scope of the jurisdiction-stripping provision in § 1252(a)(2)(B)(ii).

**B.**

This does not end our jurisdictional analysis, however. We must also consider whether the Limited Review Provision nonetheless secures our jurisdiction over good faith marriage determinations.

Neither *Patel* nor *Oropeza-Wong* addressed the application of the Limited Review Provision. However, the Supreme Court's discussion of this provision in *Wilkinson v. Garland*, 601 U.S. 209 (2024), is instructive. There, the Court analyzed whether there was jurisdiction to review a decision that a petitioner had not met the "exceptional and extremely unusual hardship" requirement necessary to be eligible for cancellation of removal. *Id.* at 212. Despite recognizing that § 1252(a)(2)(B)(i) strips courts of jurisdiction to review cancellation of removal decisions, including the underlying hardship determination, the Court

found that the "application of the statutory 'exceptional and extremely unusual hardship' standard to a given set of facts presents a mixed question of law and fact" and therefore falls within the scope of the Limited Review Provision. *Id.* at 221. Consistent with *Patel*, however, the Court reiterated that agency factfinding (for example "an IJ's factfinding on credibility") remains unreviewable. *Id.* at 222, 225.

Applying *Wilkinson*'s reasoning to the present case, we hold that the good faith marriage determination is a mixed question of fact and law over which we have jurisdiction under the Limited Review Provision. Like the statutory language of "exceptional and extremely unusual hardship," 8 U.S.C. § 1229b(b)(1)(D), the statutory language here requiring a "good faith" marriage sufficiently states a legal standard, 8 U.S.C. § 1186a(c)(4). *See Wilkinson*, 601 U.S. at 221. The good faith marriage determination, similar to the exceptional and extremely unusual hardship standard, "requires an IJ to evaluate a number of factors in determining" whether a petitioner entered into a marriage in good faith. *Id.* at 222; *compare In re Monreal-Aguinaga*, 23 I.&N. Dec. 56, 63 (B.I.A. 2001) (outlining factual considerations that impact exceptional and extremely unusual hardship determination such as age, length of residence, health, political and economic considerations in home country, and involvement in community) *with* 8 C.F.R. § 1216.5(e)(2)(i)–(iv) (listing factual considerations that impact the good faith marriage determination such as combined finances, length of time of cohabitation, and birth certificates of any children). While those underlying factual determinations are not reviewable, "[w]hen an IJ weighs those found facts and applies the ['good faith'] standard," the determination is an application of law to facts that is

within the scope of our review. *Wilkinson*, 601 U.S. at 222.[1] Although it "may require an IJ to closely examine and weigh a set of established facts, . . . it is not a factual inquiry." *Id.* at 221; *see* also *Guerro-Lasprilla*, 589 U.S. at 234 (holding "questions of law" includes the application of a legal standard to such facts).

"Only the question [of] whether those established facts satisfy the statutory eligibility standard is subject to judicial review." *Wilkinson*, 601 U.S. at 225. "[A] mixed question [that] requires a court to immerse itself in facts. . . suggests a more deferential standard of review." *Id.* at 222 ("Because this mixed question is primarily factual, that review is deferential." *Id.* at 225). The good faith marriage determination is such a primarily factual question. *See Damon v. Ashcroft*, 360 F.3d 1084, 1088 (9th Cir. 2004) ("Whether [Petitioner] entered into the qualifying marriage in good faith is an intrinsically fact-specific question . . . .");

---

[1] We note this holding is consistent with our longstanding view of the good faith marriage determination as a mixed question of fact and law as well as the conclusions of other circuits. *See, e.g.*, *Oropeza-Wong*, 406 F.3d at 1143 ("Petitions for statutory waivers . . . on the basis of a good faith marriage involve legal and factual questions . . . ."); *Nakamoto v. Ashcroft*, 363 F.3d 874, 881 (9th Cir. 2004) (noting marriage fraud is a "decidedly factual determination . . . guided by legal standards"); *see also Alzaben v. Garland*, 66 F.4th 1, 7 (1st Cir. 2023) ("The good-faith-marriage determination, then, is more appropriately conceptualized not as a wholly factual determination, but rather, as a mixed question of law and fact."); *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 234 (5th Cir. 2009) (finding jurisdiction under § 1252(a)(2)(D) to review a good faith marriage determination); *Nguyen v. Mukasey*, 522 F.3d 853, 855 (8th Cir. 2008) ("We have jurisdiction to consider what the legal standard is for the good-faith determination and to review the threshold determination of whether the credited evidence meets the good-faith standard.").

*Alzaben*, 66 F.4th at 7 (noting the fact-intensive nature of the good-faith inquiry).

We therefore hold that, as a mixed question of fact and law, the good faith marriage determination is a "question of law" that is reviewable under § 1252(a)(2)(D). As it is a primarily factual question, our review is deferential.

## III.

Applying this revised understanding of our jurisdiction, we move to analysis of the three arguments raised in Zia's petition.

First, we dismiss for lack of jurisdiction Zia's challenges to the IJ's adverse credibility finding. *See Wilkinson*, 601 U.S. at 225 ("For instance, an IJ's factfinding on credibility. . . remain[s] unreviewable."). At bottom Zia disagrees with the IJ's weighing of inconsistencies and vagueness in his testimony, but that disagreement does not amount to a colorable constitutional or legal challenge.

The adverse credibility finding is fatal to Zia's second argument that the agency erred in holding his marriage was not entered into in good faith. We review this primarily factual mixed question of fact and law under a deferential standard. *See id.* at 225. Much of Zia's arguments challenging the agency's good faith determination rely on his testimony. However, given the adverse credibility determination, Zia's testimony is of little weight. And without Zia's testimony, the remaining documentary evidence does not compel a conclusion that the BIA erred in rejecting Zia's claim that he and his wife intended to establish a life together. *See Bark v. I.N.S.*, 511 F.2d 1200, 1201 (9th Cir. 1975) ("Petitioner's marriage was a sham if

the bride and groom did not intend to establish a life together at the time they were married.").

Zia's third and final argument is that the agency violated his due process rights by failing to provide a complete hearing transcript. The hearing transcript contained 77 "indiscernible" entries related to Zia's responses during testimony, and Zia argues this incomplete record impacted his ability to perfect his appeal. We have jurisdiction to review this constitutional claim and we review de novo. *Benedicto v. Garland*, 12 F.4th 1049, 1058 (9th Cir. 2021).

As our sister circuits have recognized, "[w]e are not strangers to the problem of incomplete transcripts in immigration cases," and "a mere failure of transcription, by itself, does not rise to the level of a due process violation." *Oroh v. Holder*, 561 F.3d 62, 65 (1st Cir. 2009); *see also Witjaksono v. Holder*, 573 F.3d 968, 971 (10th Cir. 2009). A decision will be reversed on due process grounds "if (1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620–21 (9th Cir. 2006) (internal citations and quotations omitted). Zia's claim fails because he has not demonstrated any prejudice. The BIA noted that later testimony often clarified earlier indiscernible entries to the extent they were relevant to the IJ's decision, and Zia has not refuted that determination. He has not identified any missing facts that would have impacted the outcome of the proceeding, or any argument he was unable to raise before the BIA due to the missing entries in the hearing transcript. *See id.*; *see also Lata v. I.N.S.*, 204 F.3d 1241, 1246 (9th Cir. 2000) ("To prevail on a due process challenge to deportation

proceedings, [petitioner] must show error and substantial prejudice."); *Witjaksono*, 573 F.3d at 975 (" [A]n alien must show that the 'gaps [in the transcript] relate to matters material to his case and that they materially affect his ability to obtain meaningful review.'" (quoting *Oroh*, 561 F.3d at 65)); *Abdulahad v. Holder*, 581 F.3d 290, 296 (6th Cir. 2009) ("[R]espondent has not identified what material facts, if any, were omitted from the record and has, therefore, failed to show that such indiscernible testimony caused him prejudice."). Accordingly, we find Zia has not shown a due process violation.

## IV.

*Patel* and *Wilkinson* compel us to hold that we lack jurisdiction to address Zia's challenge to the agency's adverse credibility finding. While we have limited jurisdiction to review the agency's decision on the mixed question of whether his marriage was entered into in "good faith," there was no error in the BIA's determination that Zia failed to meet that standard. Finally, Zia has failed to show any due process violation arising from the imperfections in the transcript of his hearing before the IJ.

The petition for review is **DISMISSED in part** and **DENIED in part**.